## In re Moore.

## In re Lott.

### [No. 11,656.   Filed March 29, 1923.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Industrial Board.—Powers.*—The Industrial Board has no powers other than those granted either expressly or by necessary implication.   p. 475.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.—Disputes between Employer and Employe.— When Industrial Board May Act.*—Under §58 of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1921), providing that if parties fail to agree regarding payment of compensation, or if, having made an agreement, they disagree as to continuance of payment, then either party may apply to the Industrial Board for a determination of the matter in dispute, the board has authority to act as arbitrator between the employer and employe only in event of an actual disagreement between the parties which, after a good faith effort, they have been unable to settle.   p. 475.

From the Industrial Board of Indiana.

Certified questions of law.

Proceedings under the Workmen's Compensation Act in the matter of one Moore and one Lott. Questions of law certified by the Industrial Board. *Questions answered.*

ENLOE, J.—The Industrial Board has certified to us the following statements of fact, viz.:

"A. On January 10, 1923, one Kate Moore filed with the Industrial Board her compensation complaint against the Federal Construction Company in which she alleges that on January 2, 1923, one Frank Moore was in the employment of the Federal Construction Company at an average weekly wage in excess of $24; that on said date he received a personal injury by an accident arising out of and in the course of his employment, resulting in his death on said date; that the employer had actual knowledge of said injury and death at the time of the occurrence; that the said Kate Moore was the surviving wife and only dependent of the said Frank Moore; that a disagreement and dispute has arisen between her and the Federal Construction Company as to the compensation to which she is entitled as the dependent widow of said Frank Moore; that the general nature of the disagreement and dispute is as follows: (1) That the employer denies all liability for compensation; (2) that the said claimant and the employer disagree as to the rate of compensation.

That said claim was heard by a member of the Industrial Board on January 17, 1923; that upon said hearing the following facts were established without any dispute whatever:—

That on and prior to January 2, 1923, the aforesaid Frank Moore was in the employment of the Federal

Construction Company at an average weekly wage of $24; that on said date he received a personal injury by an accident arising out of and in the course of his employment, resulting in his death on said date, of which the employer had actual knowledge at the time; that the claimant, Kate Moore, is the surviving wife of the said Frank Moore; that she was living with the said Frank Moore at the time of his injury and death, and was wholly dependent upon his earnings for her support; that the burial of the said Frank Moore took place on January 7, 1923, at ten o'clock a. m.; that on the afternoon of January 7, 1923, a representative of the employer's insurance carrier called at the residence of the said Frank Moore, for the purpose of settling by agreement with the said Kate Moore, the compensation due her on account of the death of her husband; that said Kate Moore was not at her residence at said time; that said representative was unable to locate her after diligent inquiry as to her whereabouts from her immediate neighbors; that on January 8, 1923, a special delivery letter was written and addressed to the said Kate Moore at her place of residence and deposited in the United States mail; that in said letter the insurance carrier stated that the said Kate Moore was entitled to compensation at the rate of $13.20 per week during the period of her dependency, not exceeding three hundred weeks, beginning on January 2, 1923, together with $100 burial expenses and the expenses of the medical attention to the said Frank Moore at the time of the injury; that said letter was returned undelivered because the postal carrier could not locate her; that there was no disagreement or dispute between the said Kate Moore and the employer as to the liability of the employer for compensation or as to the rate of compensation; that in fact no negotiations whatever had ever taken place

between the said Kate Moore and the employer relative
to the compensation to which she was entitled, because
of the fact that the representative of the employer's
insurance carrier had been wholly unable to locate her,
either personally, or by special delivery letter.

"B.  That on and prior to October 23, 1922, one Ar-
thur Lott was in the employment of the Indianapolis
Transfer Company at an average weekly wage in excess
of $24; that on said date the said Arthur Lott received
a personal injury by an accident arising out of and in
the course of his said employment; that on November
2, 1922, the said Arthur Lott and the Indianapolis
Transfer Company executed a written compensation
agreement whereby the employer agreed to pay to the
said Lott compensation at the rate of $13.20 per week,
beginning on October 21, 1922, and to continue during
the period of his total disability resulting from the in-
jury, not exceeding 500 weeks; that said agreement was
filed with and approved by the Industrial Board of In-
diana, on November 4, 1922; that on January 8, 1923,
the said Arthur Lott filed with the Industrial Board his
application to review the award made by the approval
of said agreement, on account of an alleged disagree-
ment between him and his said employer as to the con-
tinuance of payments under said agreement because of
a change in conditions since the making and approval
of said agreement; that said Lott further alleges in
said application to review that since the making and
approval of said agreement that his injury had re-
sulted in a permanent partial impairment in this, to wit:
that he had permanently lost fifty per cent. of the use
of his right arm.

That said application was heard by the Industrial
Board on January 15, 1923, and the following facts were
established by the evidence beyond dispute:  That

under the agreement of November 2, 1922, the employer had paid to the said Lott compensation until and including March 3, 1923; that no disagreement or dispute had at any time arisen between him and the employer relative to the continuance of the payment of compensation under said agreement on account of any change in conditions; that in fact the said Lott had never advised his employer that there was any change in conditions, and no negotiations of any kind or character had ever taken place between him and his employer relative to the continuance of compensation under said agreement."

Upon the facts stated in "A," the Industrial Board of Indiana respectfully certifies for your determination the following questions of law:—"I. Would an order or award of the Industrial Board of Indiana dismissing the claim or complaint of the said Kate Moore be according to law? II. Would an order or award by the Industrial Board of Indiana that the said Kate Moore take nothing by her claim or complaint be according to law?"

Upon the facts stated in "B" the Industrial Board respectfully certifies for your determination the following questions of law:—"I. Would an order or award by the Industrial Board of Indiana dismissing the application of the said Arthur Lott for review on account of a change in conditions be according to law? II. Would an order or award by the Industrial Board of Indiana that the said Arthur Lott take nothing by his application to review on account of a change in conditions be according to law?"

It is provided in §58 of our Workmen's Compensation Act, (Acts 1915 p. 392, §8020l et seq. Burns' Supp. 1921) that,—"If the employer and the injured employe or his dependents fail to reach an agreement in regard to the compensation payable under this act, or, if they

have reached such an agreement, which has been signed by them, filed with and approved by the industrial board, and then disagree as to the continuance of payments under such agreement, because of a change in conditions since the making of such agreement, either party may make an application, to the industrial board, for the determination *of the matter in dispute."* (Our italics.)

It is fundamental that as to governmental administrative boards, such as our Industrial Board, they have no powers other than those granted, either expressly 1, 2. or by necessary implication. By the plain wording of the statute our Industrial Board is given authority to settle disputes; to act as an arbitrator when the parties themselves, the employer and the injured employe or his dependents, cannot agree. The statute says, if the parties *"fail to reach an agreement"* regarding the payment of compensation, in the first instance, or, if having made an agreement, they *"disagree as to continuance of payments,"* then either party may apply to the Industrial Board for a determination of the controversy. The word failure connotes an attempt, an effort, a trial, and the language of the statute, if it is to be given any force and effect, certainly implies that there shall at least be a good-faith effort by the parties to settle the dispute, and an actual disagreement between them as to the rights of the parties. Then, and only then, are they at liberty to ask for the help of the Industrial Board, and then, and only then, is the Industrial Board authorized to hear and decide the matter in dispute. These provisions of our statute are in harmony with the rule, founded in a sound public policy, that the law abhors litigation, and favors the settlement of disputes by the parties interested where that can be done without the surrender of any right. Language in the British Workmen's Compensation Act similar to

that used in our statute has been similarly construed. See *Payne* v. *Fortescue & Sons* (1912), 5 B. W. C. C. 634, and authorities there cited. In *Field* v. *Longden* (1901), 1 K. B. [1902] 47, it was said:—"The Workmen's Compensation Act was instituted for the benefit of the workmen, not for that of the legal profession. No doubt there has unfortunately been a good deal of litigation under the act, but I do not think we ought, unless absolutely compelled by the language used, to put such a construction upon it as to convert it into a perennial source of litigation and needless expense."

As the Industrial Board is without jurisdiction, each of said claims should be dismissed. We therefore answer questions numbered one (1), in the affirmative, and questions numbered two (2), in the negative.