H. WILLIAM SCOTT *v.* FRED W. SUITOR ET AL.

November Term, 1930.

Present: POWERS, C. J., SLACK, MOULTON, WILLCOX, and THOMPSON, JJ.

Opinion filed January 7, 1931.

*H. William Scott pro se* for the plaintiff.

*Deane C. Davis* for the defendants.

POWERS, C. J. By the terms of its charter, the government of the city of Barre is vested in a city council consisting of the mayor and the board of aldermen. This council is authorized to appoint certain city officers, one of which is an overseer of the poor; the prescribed procedure being that the mayor shall nominate such officers and the aldermen shall confirm them. These appointments are to be made during the month of March after an annual election. It is provided that in case all the nominations made by the mayor for a particular office have failed of confirmation by the 15th of April, the council, at any time between the 16th of April and the 1st day of May, by a vote of any five of its members, may appoint some person to such office without a nomination by the mayor. And in the event of a failure to fill any office by the method specified by May 1, the mayor may thereafter appoint such officer without confirmation by the board.

It thus appears that it was intended that these officers should be chosen by the joint action of the mayor and the board of aldermen, each having a check upon the other. But to avoid the situation that would result from a deadlock between the mayor and the board, conditions were prescribed under which one could act without the concurrence of the other.

On April 7, 1930, the mayor submitted his first nomination of an overseer of the poor to the board of aldermen. It is agreed that no legal appointment resulted therefrom, and it is quite obvious that his right of nomination had then expired. Nothing further was done about appointing an overseer until June 2, when the mayor appointed John R. Milne, one of the defendants, overseer of the poor for said city.

The complainant was the overseer for the year 1929, and by the charter continues in office until his successor is appointed and qualified. He here seeks to restrain the defendants from going any further in the attempt to select his successor, and to establish his right to the office.

The whole question presented depends upon the true meaning of the following provision of the city charter: "But in the event of the failure to fill any office by the above method, the mayor shall have the right, after May 1, to appoint someone to said office, and said appointment shall be valid without being confirmed by the board of aldermen"—the key word of which is "failure." While this word is often used in the sense of non-performance and then connotes a mere omission to act (see *State* v. *Sargent,* 81 Vt. 266, 69 Atl. 825), it frequently takes on a broader meaning.

Thus, in *O'Connor* v. *Tyrrell,* 53 N. J. Eq. 15, 30 Atl. 1061, 1063, the provision in a contract of sale of land was that "in the event of the failure of said parties of the first part to deliver the deed at the time and in the manner hereinafter referred to," etc. It was held that the word "failure" therein required an earnest effort to deliver a deed which would vest the title in the purchaser, and did not mean mere inaction or refusal.

*In re Moore,* 79 Ind. App. 470, 138 N. E. 783, 784, involved a statute that provided for action by an industrial board when an employer and an injured employee or his dependents "fail to reach an agreement." It was held that this statute required an attempt to agree and an actual disagreement between them before they could call upon the board.

In *Christenson* v. *Carleton,* 69 Vt. 91, 93, 37 Atl. 226, the provision in a contract of submission to arbitrators was that, in case the arbitrators "failed to agree," they might call in a third arbitrator. This Court held that they had no right to call such third person until they had exercised their judgment regarding the matters referred to them and

had disagreed. It is in this sense that the term "failure" is used in the charter. It presupposes an effort that has proved fruitless: It demanded a *bona fide* and seasonable attempt to select an overseer by the joint action provided for. Until that attempt had been made, there could be no "failure." Were it otherwise, the mayor, by the simple expedient of withholding nominations, could circumvent the charter provision giving the aldermen a voice in the selection of any of the appointive officers of the city. Such a result is to be avoided if the language used by the Legislature is reasonably susceptible of a construction that will avert it. The construction which we have put upon the word "failure" accords with the purpose of the Legislature as shown by the context of the charter, and the complainant is in rightful possession of the office.

*Decree reversed, and cause remanded. Let a decree be entered establishing the complainant's title to the office of overseer of the poor for the city of Barre, and enjoining the defendants from disturbing him in the exercise and enjoyment thereof.*