HOMAN ET AL. *v.* BELLEVILLE LUMBER AND SUPPLY COMPANY ET AL.

[No. 15,783. Filed May 4, 1937. Rehearing denied October 14, 1937.]

*Jones, Obenchain & Butler,* for appellants.

*Barrett, Barrett & McNagny, Leigh L. Hunt, Henry L. Humrichouser, Mentor Kraus* and *J. A. Bruggeman,* for appellees.

KIME, J.—Paul H. Homan was, on May 28, 1934, in the employ of the Belleville Lumber & Supply Company, earning a weekly wage in excess of $30.00 and on

that day an automobile in which he was driving in the course of his employment came into collision with a train, operated by the New York Central Railroad Company, and he sustained an injury as a result of an accident arising out of and in the course of his employment. The next day Homan died as a result of the accident leaving surviving him a widow and two minor daughters, the appellants here. On July 30, 1934, the appellants filed a verified application for an adjustment of their claim for compensation. A hearing was had on this application before a single member of the board on December 5, 1934. On December 22, 1934, before an award was made, this application was dismissed by the applicants.

About the 1st day of December, 1934, Mary Virginia Homan, the widow, was appointed administratrix of the estate of Paul Homan, deceased, and on the 26th day of December she filed a petition in the St. Joseph Superior Court, which court has probate jurisdiction in that county, alleging that her husband had been killed by reason of his having been struck by a train operated by the New York Central Railroad Company while he was driving an automobile across the tracks of said railroad company; that since that time negotiations had been carried on between her attorneys and attorneys for the railroad company and that such negotiations had resulted in an offer on the part of the railroad company to pay to her, as administratrix, the sum of $500.00 "in full compromise settlement of all claims and demands against said New York Central Railroad Company." She further alleged that she, as administratrix, believed this settlement to be the highest and best possible that could be made with said railroad company and asked the court for an order authorizing her, as such administratrix, to enter into such agreement. On the same day the St. Joseph Superior Court No. 1 entered an order

to the effect that the court had been "duly advised in the premises" and finds that the offer of the railroad company to said administratrix "in full and final compromise, compound and settlement for all liability of said railroad company should be accepted, and that said administratrix should be authorized to enter into such release as shall fully and sufficiently release said railroad company from further liability." And upon such finding ordered, adjudged and decreed that "Mary Virginia Homan, as administratrix of the Estate of Paul Homan, deceased, be, and she is authorized and empowered to accept from the New York Central Railroad Company the sum of Five Hundred ($500.00) Dollars in full compound, compromise and settlement of all claims and liabilities of said railroad company growing out of the death of said Paul Homan," and further authorized her to execute a complete and final release and agreement to said railroad company "releasing it from all further claims and demands of every nature and kind." A day or so later the railroad company paid to her, in consideration of her release, as administratrix, the sum of $500.00 whereby she released and discharged the said railroad company "from all claims, demands, causes of action, and from all liability for damages of whatsoever kind, nature or description now existing or which may hereafter arise from or out of injuries received . . ." by her husband on the 28th day of May, 1934, and his death. This release was signed in the presence of a claim agent for the railroad company and one of her attorneys, a member of the firm of attorneys handling her business on December 31, 1934.

On January 11, 1935, the appellants filed with the Industrial Board their second verified application alleging that they were the dependents of Paul H. Homan who died as an approximate result of personal injuries received by him by reason of an accident arising out of

and in the course of his employment with the Belleville Lumber and Supply Company and made the insurance carrier, the Lumbermen's Mutual Casualty Company, a party defendant, stating that a controversy had arisen with respect to the compensation to be paid therefor and that the defendant denies liability for compensation, stating further in said application that the decedent was engaged in driving an automobile on the company's business in the performance of his duty and met with an accident which was caused by the automobile in which he was riding being struck by a train belonging to the railroad company. The application was signed and verified by Mary Virginia Homan and by her attorneys. There was a hearing on this application before a single member of the board which resulted in an award in favor of the appellants, which award was reviewed by the full board and its award was to the effect that appellants were entitled to compensation in equal shares totaling the sum of $16.50 per week beginning on May 29, 1934, during the period of their dependency but not exceeding 300 weeks, and that the compensation of the two minor dependents be paid to their mother for their maintenance and support without her being appointed guardian or trustee and that the employer pay the reasonable medical, etc., expenses incident to the injury and $100.00 burial expense. Payments were made under this order to and including September 30, 1935, by the Lumbermen's Mutual Casualty Company, the insurance carrier.

On October 21, 1935, an attorney who had represented the defendant employer and insurance carrier before the Industrial Board discovered that Mary Virginia Homan as administratrix had given her release as such to the railroad company. He immediately called one of the attorneys representing her and told him that the compensation must necessarily cease under the

award, and on November 2, 1935, the appellee, Belleville Lumber and Supply Company, filed an application for review on account of mistake and asked that the award of June 19, 1935, be "vacated, set aside and held at naught because of mistaken fact." On December 10, 1935, the appellants through their attorneys filed what they denominated a motion to dismiss the appellee lumber company's petition for review on account of mistake for the reason, as they alleged, that the Industrial Board had "no jurisdiction, power, or authority to vacate said award and held at naught because of mistaken fact" and on January 30, 1936, the appellee Lumbermen's Mutual Casualty Company filed an application with the board to "correct, vacate and set aside an order and award" of the single member and of the full board "for the reason that said awards and each of them were and are the result of fraud, duress, mistake and gross irregularity" and asked that the board "correct, vacate and set aside the said awards, and for all other and further relief to which it may be entitled in the premises." At a hearing had by a single member of the board an order was made that the questions raised by the appellees' application should be referred to the full board and on February 15, 1936, the appellants filed a motion to dismiss the applications of the appellee Lumbermen's Mutual Casualty Company theretofore filed.

There were other so-called pleadings filed by both parties prior to the hearing before the full board but it would serve no useful purpose to mention them. On April 1, 1936, a hearing was held before the full board at which time there was evidence introduced of the petition filed by the administratrix of Paul Homan's estate with the court having probate jurisdiction in St. Joseph County asking that she be permitted to accept from the railroad company the $500.00 heretofore mentioned and a certified copy of the order issued by the court direct-

ing her to do this, and further that she had, as such administratrix, accepted said $500.00 and executed a release to the railroad company and further that the appellees had no knowledge of such action until October 21, 1935.

Following this the appellants tendered evidence to the effect that following the discovery by the appellees of the acceptance of $500.00 by Mrs. Homan as administratrix that she, as such administratrix, petitioned the court having probate jurisdiction, which had issued the order heretofore mentioned to be allowed to tender back to the railroad company the money, together with interest thereon and that such court gave her the authority to tender back and she did tender back to the railroad company the $500.00 together with interest accrued thereon to that time and that the railroad company returned to her the release issued by her, as such administratrix, marked "cancelled." All of this offered evidence was rejected and the board refused to hear any of it and entered an order finding for the appellees and each of them and set out in detail the facts as heretofore set out in this opinion with the exception of such facts as were offered by the appellants and refused to be heard by the board, and further found that the appellants' right to compensation was barred by the settlement made by said administratrix, and that none of the appellants or any of them were entitled to compensation by reason of the death of the decedent, and that the awards made by the single member and by the full board were based upon mistake of fact and gross irregularity and should be set aside and corrected and entered an award that "The award of . . . single member made and entered herein on April 23, 1935, and the award of the full Industrial Board of Indiana, made and entered herein on the 19th day of June, 1935, should be and the same hereby are vacated and set aside."

Following this the appellants took the proper steps to present this matter to this court, their assignments of error being that the board had no jurisdiction to vacate, annul or modify the award entered on June 19, 1935, and that the award was not sustained by sufficient evidence; that it was contrary to law and that if the board had any jurisdiction to vacate the award it should then have proceeded to hear the offered evidence and made an award thereafter.

The appellants contend that the Industrial Board had no jurisdiction to set aside an award once made but they say that in the event we should hold that the Industrial Board did have jurisdiction to set aside an award under such a state of facts as exist here that the board then should hear the entire matter again and make a redetermination on the second application.

The appellants insist that at the time the board set aside its award it was wholly without jurisdiction.

It has been held many times that the reason for the establishment of such administrative agencies as the Industrial Board was for the purpose of taking away from the courts and giving to an administrative agency the power to adjust disputes of the character here involved. In English speaking countries from the inception of courts down until the year 1900 the law courts had jurisdiction of such cases as were then given to such administrative agencies. The system of administrative control over industrial accidents originated in the code countries of the continent. Of the English speaking countries England originally adopted it and shortly after that it found its way into the United States and then into Indiana. Great dissatisfaction had arisen in the manner in which this class of cases was handled by the courts and the people sought to establish a more expeditious and surer method by which those who were injured in industry could receive something for such

injury. The statute as originally enacted in Indiana was a radical departure from what those trained in the law had known prior thereto, and in the early interpretation of this statute by the courts probably with some natural antagonism to encroachment of any agency upon their exclusive domain, despite their pronouncement of liberal construction, held rather firmly to their ideas gained through years in the law.

Despite such construction, whatever it may have been, we believe that the time has arrived to recognize that in this act were broad powers that the people intended the administrative agency should have when they enacted this idea into law. Throughout the entire act it is obvious that the people through their law making agency intended that the Industrial Board, which they created, should have *full, complete and absolute administration of such law*. That resort was not to be had to the courts until the administrative process had been completely exhausted. They provided that all injuries received by reason of accidents arising out of and in the course of employment should be covered by this law unless the parties had specifically exempted themselves therefrom; they set up a board of five members which they believed would be sufficient to administer the act; provided how hearings should be held in place of trials; that the procedure used in law courts should not necessarily be applicable to the hearings before the board; provided that it should all be done in a *summary* manner; provided a speedy method for the review by the full board if that action was by a single member and a speedy review of the action of the full board by a review by this court.

It seems plain from even a casual reading of the act that it was intended that the administrative body created was to replace the function that had, until that time, been exercised by the court.

It further provided that *the power and jurisdiction*

*of the board should be continuing* whenever there was a "change in condition." Unfortunately in the past this has been interpreted to mean a change in the physical condition of the injured one but certainly this was not what the general assembly had in mind. They provided further that the board should not make a modification after the expiration of a certain time after the termination of the compensation period, which inferentially, at least, is evidence that the general assembly thought, at that time, that they were giving to the board full and exclusive jurisdiction from the time there had been an application made to them until all things incidental to the administration of the law had been done.

It was provided further that *in the event of a disagreement in regard to compensation payable under the act* that resort should then be had to the board, and further that *all disputes* arising under this act, if not settled by the agreement of the parties, should be determined by the board and further that the board *"shall hear* and *shall determine* such disputes arising between the parties."

In an effort to get away from what we have known in civil procedure as a motion for new trial, the act specifically provides that the award of the board should be conclusive and binding as to all questions of fact and that as to questions of law they should have thirty days in which to resort to this court for review thereof. This court has many times held, and we think correctly, that the parties to a compensation claim are not entitled to what civil procedure recognizes as a motion for a new trial but that is not the situation here. Here, immediately after the accident, which resulted in the death of the employee, the widow and her two minor children, after consulting a lawyer or firm of lawyers, filed through such firm of lawyers an application before the Industrial Board, seeking such compensation as the act

provided. A hearing was had before a single member of the board, but prior thereto the widow had been appointed administratrix of her husband's estate and had either independently or through her attorney or firm of attorneys negotiated with the railroad company, whose train ran into the automobile in which her husband was riding, concerning the liability of the railroad company. When an agreement had been reached between her, as administratrix, and the railroad company then the pending application before the Industrial Board was dismissed and subsequent thereto she collected from the railroad company $500.00 and gave to them a release, releasing them from all liability. The act provides that whenever an injury or death occurs under such circumstances as creates in some parties other than an employer a legal liability to pay damages that his dependents, in case of the death of the injured person, have the option of claiming compensation from the employer or proceed in law against the third party and they may proceed against the employer for compensation before the Industrial Board and against the third party to recover damages at the same time, but they *"shall not collect from both."* Here the administratrix accepted money from the third party who at least thought there was a legal liability and which legal liability she, as administratrix, released. Following this collection from the railroad company she, as the widow, together with the two minors, filed a new or second application before the board seeking compensation for the death of her husband against his employer. This was prosecuted to a finality and an award was made giving such dependents compensation and such compensation was paid until the fact that she had accepted money from the railroad company was discovered by the insurance carrier or its representative. As soon as this fact was discovered the employer and the insurance carrier made

known such fact to the board by filing therewith a written petition which disclosed such fact. A hearing was had on said petition as to whether or not such fact existed. The board not only determined that she had accepted this money from the railroad company but this was also admitted by the appellants, and the board, after determining this fact, concluded, evidently, that at the time the application, upon which the award was made, was filed that the board did not have jurisdiction.

One of the questions here is whether or not the Industrial Board has the right to set aside an award when the facts disclose that at the time the purported award was made the board was without jurisdiction to make it. Since there are no precedents and since cases that some might think to be applicable are not helpful we must make an appraisal and comparison of social values sought to be gained by turning over to an administrative body such functions which had prior thereto been in the exclusive domain of the courts. The function of this workmen's compensation law can only adequately be had when it is suited to the life of the people. With this radical change comes also the imperative demand that this creature of statute shall be interpreted to satisfy the needs which such change has created. Since the legislature has created a new administrative agency we should not formulate legal doctrines suited to such situations except by examining the product of the legislative body, namely the act itself, and to discern from that the objects it sought.

We believe that it should be the concern of the court to interpret the act in such manner as to help the legislature accomplish the end that it intended and that the act should be used as a starting point from which judicial reasoning should begin with a view to the correction of the evils and an accomplishment of the ends

sought. We do not believe there is any need to restrict activities which the legislature intended such administrative bodies should perform and we think the objects sought to be gained by such legislation should be given every help in that direction by our interpretation. When this administrative agency was created it was with the desire and expectation that it could and would perform efficiently the task submitted to it and until it is determined definitely that such agency has not done these things efficiently we do not believe there is any need for such function to be duplicated by the courts.

With these ideas as a background it is our belief that the legislature intended that the Industrial Board itself should be at least the primary judge of its own jurisdiction. Of course there could be, at least, two methods open to people situated as were the people here. Here when it was discovered that at the time the award was made those liable for the payment of the award could have refused payment and forced those entitled to the payment to resort to a court to establish their right to a continuance of payments, or to have that court adjudge that they were no longer entitled to such payments or they could do as they did here—present such facts to the administrative body which had made the award and have that body determine whether or not at the time the original award was made it had jurisdiction to make that award or any award.

Early in the interpretation of this administrative act this court recognized that the legislature was seeking to correct the prior evils and abuses by introducing this new legislation for the "advancement of public welfare" and said that it was remedial in character and should be construed with regard to the former laws which it supplemented and the defects or evils which it sought to correct and concluded that it should be liberally construed so that the purpose of the legislature should be

promoted "even to the inclusion of cases within the reason although outside the letter of the statute." *In re Duncan* (1920), 73 Ind. App. 270, 127 N. E. 289.

This same idea has been reiterated by the courts from the time of its announcement down to the present time. If we are to achieve one of the ends sought by the legislature our inevitable conclusion must be that one of the ends sought was the elimination of costly processes of the law prior to its enactment. If the Industrial Board here did not have the power to decide its jurisdiction and litigants must be forced into courts there would be no saving of time or expense, and no different condition would obtain than did prior to the enactment of this law. We believe it was the intention of the legislature, and if not the specific intent at least the general one, as gathered from the act as a whole, that matters of this kind are incidental to the administration of this act and should be passed upon by the board.

It is our belief that we should say and by this opinion do say that whenever in the processes of the administration of this act there is called to the attention of the board matters which show that the board was without jurisdiction that it should pass upon the question and if those involved are not satisfied then that action can be reviewed finally by this court.

Since the Industrial Board has full, complete and absolute administration of this law within the limits prescribed by the act and decisions of this court its jurisdiction is continuing, therefore, where there has been a change in the condition of the parties as the rejected evidence indicates, the Industrial Board should conduct a hearing and determine what that change has been and make a finding and award thereon. Here, without dispute, it is shown that at the time of the last hearing before the board the widow had paid back to the railroad company all the money that she had received

therefrom and placed herself in a position to be entitled to the benefits of the Workmen's Compensation Law. The refusal of the board to hear the evidence tendered was error and under such a situation as the one here it was the duty of the board to hear the tendered evidence and to make such award as the facts warranted.

This cause is remanded to the Industrial Board with instructions to hear the evidence tendered by the appellants and for such further proceedings not inconsistent with this opinion.

Wood, C. J., and Curtis, J., concur in result.

Bridwell, P. J., dissents.

Dudine, J., dissents. Opinion to follow.

## DISSENTING OPINION.

DUDINE, J.—I cannot agree with the conclusion reached in the prevailing opinion that the Industrial Board had power to vacate its award of June 19, 1935, on the grounds alleged in the applications for vacation thereof, which applications were filed in this case and which grounds were shown by the evidence in this case. That holding assumes that the Industrial Board has a power which the legislature did not confer upon it expressly or by "necessary implication." (See *In Re Moore, In Re Lott* (1923), 79 Ind. App. 470, 138 N. E. 783.) That holding in effect assumes that the Industrial Board has the power to grant a new trial on the ground of newly discovered evidence.

Although the facts are set out in detail in the prevailing opinion, I deem it advisable to restate them for the purpose of clarifying my views concerning the case.

Paul H. Homan died on the 29th day of May, 1934, as a result of injuries received on May 28, 1934, in a collision of the automobile which he was driving with a train of the New York Central Railroad Company, at a street intersection in South Bend. He was an employee

of appellee Belleville Lumber and Supply Company.

On July 30, 1934, appellants filed their application, as dependents of said decedent, for adjustment of their claim for compensation. On December 22, 1934, appellants filed their written motion to dismiss their said application. On December 26, 1934, appellant "Mary Virginia Homan, as administratrix of the estate of said Paul H. Homan . . . petitioned for and obtained an order of the St. Joseph Superior Court, . . . having probate jurisdiction of said estate, authorizing and directing her to accept the sum of five hundred dollars ($500.00) from the New York Central Railroad Company in full settlement of all claims for the death of the said Paul H. Homan and to execute a full and complete release therefor . . . On December 31, 1934, the said Mary Virginia Homan, as administratrix of the estate of Paul H. Homan, executed a full and complete release to the New York Central Railroad Company for the death of the said Paul H. Homan, and as consideration for said release received the sum of five hundred dollars ($500.00) from the said New York Central Railroad Company . . ." (Quotation from finding of the Industrial Board.)

On January 2, 1935, the Industrial Board granted appellants' said motion to dismiss their said claim for adjustment of their claim for compensation.

On January 11, 1935, appellants filed another application for adjustment of their claim for compensation. A hearing was had upon said application. Upon review, the Industrial Board, on June 19, 1935, granted appellants an award of compensation for three hundred weeks, beginning May 29, 1934 (date of decedent's death).

Appellee Lumbermen's Mutual Casualty Company was the insurance carrier for said Belleville Lumber and Supply Company. Neither of said companies knew

until October 21, 1935, that said settlement had been made with the New York Central Railroad Company. On November 2, 1935, appellee Belleville Lumber and Supply Company filed its "application for review on account of mistake" in said award of June 19, 1935, and on January 30, 1936, appellee Lumbermen's Mutual Casualty Company filed its "application to correct and vacate" said award of June 19, 1935, "on account of fraud, duress, mistake and gross irregularity."

Hearing was had upon said applications by the full Industrial Board, which found facts in effect as above set forth, and further found that said award of compensation "was based on mistake of fact and gross irregularity." The board in its award decreed that said award of compensation "should be vacated," and that appellants take nothing on their application filed January 11, 1935.

The error assigned on appeal is that the award is contrary to law.

Appellants contend the Industrial Board had no power to vacate the award of June 19, 1935, which granted them compensation. They contend further that "no appeal having been taken from the full board's award of compensation, that award was conclusive and binding upon the parties and the board with respect to all conditions existing at the date thereof."

Appellees concede that it is the rule that where no appeal is taken from an award of the full Industrial Board the award is final and conclusive upon the parties, but contend that "that rule . . . is based upon the assumption that the award conforms to law and that it was not fraught with mistake, or procured by fraud or irregularity." Appellees contend further, "There is no finality to an award based upon mistake, fraud or gross irregularity, because such an award does not conform to the law." Appellees contend further that the

award of compensation in the instant case was based upon mistake, inasmuch as the Industrial Board, in absence of evidence to the contrary, assumed that no settlement had been made by appellants with any third party for its liability for the death of decedent.

"It has been many times held that boards created by statute, such as the Industrial Board of this state, are creatures of limited jurisdiction, that they are administrative bodies and as to jurisdiction borrow nothing by mere implication; . . ." *Martz v. Grasselli Chemical Co.* (1927), 87 Ind. App. 400, 405, 162 N. E. 737.

"It is fundamental that as to governmental administrative boards, such as our Industrial Board, they have no powers other than those granted, either expressly or by *necessary* implication." (Our italics.) *In re Moore, In re Lott* (1923), 79 Ind. App. 470, 475, 138 N. E. 783.

Sec. 59 of the Indiana Workmen's Compensation Act (Sec. 40-1510 Burns 1933, §16435 Baldwin's 1934) gives the Industrial Board jurisdiction to hear and determine disputes between parties in a summary manner.

Sec. 45 of said Act (Sec. 40-1410 Burns 1933, §16421 Baldwin's 1934) *is the only section which expressly gives the Industrial Board jurisdiction to modify or change awards previously made.* That power to modify or change awards is expressly granted, however, by said statute only in cases where there has been a "change of conditions," and to "correct *any clerical error or mistake of fact in any finding or award.*"

Although appellees cite Sec. 45, *supra,* of said Act in support of the contention that the Industrial Board had jurisdiction to vacate the award of compensation, they do not contend that there was a "change of conditions," in the instant case, or that the Industrial Board, by the award appealed from, was merely correcting a "clerical error or mistake of fact in . . . (the) . . . finding." Appellees contend, however, "It is within the jurisdic-

tion of the Industrial Board and it has the power and authority to review, vacate and correct *any of its awards, for fraud, duress, mistake or gross irregularity, affecting substantial rights,* when an application therefor is seasonably made." Citing *Frankfort General Insurance Co.* v. *Conduitt et al.* (1921), 74 Ind. App. 584, 127 N. E. 212; *Aetna Life Ins. Co.* v. *Shiveley et al.* (1921), 75 Ind. App. 620, 121 N. E. 50; *Wyatt Lumber and Coal Co. et al.* v. *Hartford Acc. and Indemnity Co. et al.* (1927), 85 Ind. App. 548, 154 N. E. 776; *Builders and Manufacturers Mut. Cas. Co.* v. *Evans et al.* (1928), 88 Ind. App. 170, 163 N. E. 529.

In *Frankfort General Insurance Co.* v. *Conduitt et al., supra,* this court did say (p. 594):

> "We hold that the Industrial Board has the power in case of fraud, duress or mistake to vacate its approval of a compensation agreement, and to entertain an application for that purpose. . . ."

In that case this court quoted with approval from *In re Stone* (1917), 66 Ind. App. 38, 117 N. E. 669, an opinion on a certified statement of facts, where an employer and employee had entered into a compensation agreement which was approved by the Industrial Board, and about six weeks later the employee filed a petition alleging a mutual mistake as to the terms of said agreement and as to the amount of compensation payable thereunder. This court in *In re Stone, supra,* in discussing the question as to whether the Industrial Board had jurisdiction to consider said petition, said (p. 43):

> ". . . we are of the opinion . . . that the Industrial Board under its broad supervisory powers expressly conferred by the statute creating it would have the power to hear and determine the petition before it at any time before the case was finally disposed of. Its jurisdiction in such matters is not dependent upon the setting aside of the agreement. Such jurisdiction exists over the subject-matter and the parties notwithstanding the agreement,

whether it be an agreement upon the facts giving the board jurisdiction only, or whether it be a compromise settlement of all compensation due under the act and it is broad enough to include all disputes between the employer and the injured employee or his dependents with reference to the compensation to be paid or received under the act."

Those statements were quoted with approval in *Frankfort General Insurance Company* v. *Conduitt et al., supra.*

It should be noted that said statement is not supported by any authorities in the opinion, and that it is dictum. (See 65 A. L. R. 165, note.) Earlier in the opinion the court said (p. 43):

"It is apparent from the agreement that it (the agreement) is incomplete in that no compensation is agreed upon for and during partial disability. Under such circumstances the board, not having relinquished its jurisdiction of the parties or the subject-matter, has the right upon proper petition to hear the parties and make such further provision for compensation as the facts warrant, not exceeding the maximum provided in the act, the same as though no agreement had been reached."

Therefore, *In re Stone, supra,* is not authority for said holding in the case of *Frankfort General Ins. Co.* v. *Conduitt, supra.*

In the Frankfort General Insurance Company case, *supra,* this court also quoted with approval from *Aetna Life Ins. Co.* v. *Shiveley et al., supra* (opinion by this court November 27, 1918, petition to transfer dismissed by Supreme Court May 20, 1931) as follows (p. 633):

"The board (Industrial Board) is not expressly authorized to vacate an order approving such an agreement (compensation agreement) as is involved here. It is expressly authorized to approve such an agreement fairly made, and conforming to the act. It necessarily follows that as an incidental power the board is authorized to determine whether such an agreement was fairly made and whether it does conform to the act. But when the board's ap-

proval has been procured by fraud or is the result of mistake or the like, and where as a consequence the agreement and its approval have no just foundation upon which to stand it seems to us apparent that in any pending proceeding the board *as an incidental power* has a right to determine such fact, and if found to exist, annul the order approving the agreement." (Our italics.)

It should be noted that that statement is not supported by any authorities in the opinion (and) that the principal question, to wit, whether or not an order of the Industrial Board refusing to vacate a previous award be reversed, was determined upon other grounds, to wit, upon the general ground that "through inadvertence this proceeding did not receive that careful consideration that usually characterizes action by the board." (Quotation from *Aetna Life Ins. Co.* v. *Shiveley, supra.*) That case is, therefore, not controlling authority for said holding in the Frankfort General Insurance Company case, *supra.*

The basis for this court's decision in the Aetna Life Insurance Company case, *supra,* is further indicated by the following language taken from the opinion, to wit (p. 636):

"It appears affirmatively that the board in denying the application, did not in fact consider it. . . . We are unable to determine what would have been the fate of the application had it been considered from the proper viewpoint. . . . The application presented a question of fact, and such questions are primarily for the board."

I disagree with the statement in Aetna Life Insurance Company case, *supra,* to the effect that the Industrial Board acquires the power to vacate an order based on fraud, mistake "or the like" *as an incident to the power to make the award.* The only powers which the Industrial Board has, and which are not expressly given, are those which are granted by *necessary* implication. (See

*In re Moore, In re Lott, supra.*) It can not be said that the power to *vacate* an award is *necessarily* implied from the power to *make* an award. Lack of power to vacate its awards does not prevent the Industrial Board's full performance of its power to make awards. (See *Brown* v. *Goble* [1884], 97 Ind. 86, where it was held that a Justice of the Peace Court does not have power to vacate or annul judgments; similar holding as to a city court in *Steinmetz* v. *G. H. Hammond Co.* [1906], 167 Ind. 153, 78 N. E. 628; similar holding as to Board of County Commissioners, *State ex rel.* v. *Richey* [1930], 202 Ind. 116, 172 N. E. 119.)

This court in *Frankfort General Ins. Co.* v. *Conduitt, supra,* cited no other authorities and stated no additional reasons in support of said holding.

*Wyatt, etc., Coal Co.* v. *Hartford Acc., etc., Co., supra,* and *Builders, etc., Casualty Co.* v. *Evans, supra,* cited by appellees, follow said holding in *Frankfort General Ins. Co.* v. *Conduitt, supra,* but do not state any further reasons or cite any additional authorities in support thereof. The same result could have been reached in *Wyatt, etc., Coal Co.* v. *Hartford Acc., etc., Co., supra,* by holding that the Industrial Board did not have power to vacate an award and declaring such proceeding a nullity. *In re Stone, supra; Aetna Life Ins. Co.* v. *Shiveley, supra; Frankfort General Ins. Co.* v. *Conduitt, supra; Wyatt, etc., Co.* v. *Hartford Acc., etc., Co., supra; Builders, etc., Co.* v. *Evans, supra,* insofar as they conflict with this opinion, should be overruled.

In the prevailing opinion it was held, inferentially at least, that the Industrial Board was without jurisdiction of this case after appellant, Mary Homan, accepted the five hundred dollars ($500.00) from the railroad company in settlement of all claims for the death of her husband. It is my opinion that the acceptance of said money did not affect the jurisdiction of the Industrial

Board with reference to this case, but that the acceptance of said money was merely a matter of defense against the application for compensation, which could have been pleaded and proven before the Industrial Board. The question may arise how a person against whom an award based on fraud or mistake, which is not a "clerical error or mistake of fact in any finding or award," is made, can obtain relief therefrom. In that regard it is sufficient to say that that question is not presented. I submit, however, that the following cases support the idea that courts of equity have such power, to wit: *Steinmetz* v. *G. H. Hammond Co.* (city court), *supra; Greenwaldt* v. *May* (1891) (justice of the peace court), 127 Ind. 511, 27 N. E. 158; *Panozza* v. *Ford Motor Co.* (1931), 255 Mich. 149, 237 N. W. 369, as to department of labor and industry; *Malone* v. *United Zinc and Smelting Corp.* (1936), 175 Okla. 643, 54 Pac. (2d) 360, as to State Industrial Commission.

It is my opinion that the Industrial Board did not have power to vacate said award of June 19, 1935, and, therefore, the award of the Industrial Board, from which this appeal was taken should be reversed with instructions to the Industrial Board to set aside said award as a nullity, and to strike from its files the applications upon which said award was based.

Bridwell, P. J., concurs.